FILED

2009 Oct-23  AM 10:40
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

WILLIAM E. TURNER, JR.,     )
                           )
         Plaintiff,         )
                           )
     v.                   )     CIVIL ACTION NO. 08-G-0649-J
                           )
MICHAEL J. ASTRUE,        )
Commissioner of Social Security,   )
                           )
         Defendant.     )
                           )
                           )

## <u>MEMORANDUM OPINION</u>

The plaintiff, William E. Turner, Jr., brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security benefits.  Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether he has a severe impairment;

(3)     whether his impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform his past work; and

2

(5)     whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

        In the instant case,  ALJ Charles L. Brower determined the plaintiff met the first two tests, but concluded that while the plaintiff's "occasional lumbar strain"is "severe," it did not meet or medically equal a listed impairment.  [R. 22].  However, he found the plaintiff's alleged mild mental retardation is not a severe medically determinable impairment.  [R. 19].  The ALJ found the plaintiff able to perform his past relevant work as a laborer.  [R. 23].


                                    **DISCUSSION**

        The plaintiff claims disability under Listing 12.05C.  Listing 12.05C requires that the claimant have "A valid verbal, performance, or full-scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function."  Davis v. Shalala, 985 F.2d 528, 531 (11th Cir.

3

1993)(quoting Listing 12.05C).  When considering whether the plaintiff has a physical or mental impairment imposing significant work-related limitation of function in addition to a low verbal scale I.Q., the Commissioner must consider the plaintiff's impairments in combination.  Davis 985 F.2d at 533.  The issue of what constitutes "a physical or other mental impairment imposing additional and significant work-related limitation of function" was addressed in Edwards by Edwards v. Heckler:

> An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal.  The question under Listing 12.05C, however, is not whether the impairment is in and of itself disabling, thus, "significant" requires something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir. 1985)(considering whether the presence of chronic obstructive lung disease and exercise induced asthma provided a sufficient additional impairment to meet the second prong of Listing 12.05C.).  The second part of the Listing, therefore, imposes a less stringent requirement than that imposed by 20 C.F.R. § 404.1520(c).  Section 404.1520 sets forth the five-step sequential process by which a claimant's disability is evaluated.  Section 404.1520(c) defines "severe impairment" to require that the impairment or combination of impairments significantly limit the claimant's physical or mental ability to do basic work activities.

In addition to a valid I.Q. score meeting the requirements of Listing 12.05C, a plaintiff must also satisfy the diagnostic description in the introductory paragraph of Listing 12.05C.  Listing 12.00A ("If your impairment satisfies the diagnostic description

4

in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.")  The introductory paragraph to Listing 12.05C is as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Therefore, a claimant must have manifested "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to the age of 22 in order to meet Listing 12.05C.  In this circuit, it is presumed that a persons I.Q. remains fairly constant throughout his life and a valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two.  Hodges v. Barnhart, 276 F.3d 1265, 1268-69  (11th Cir. 2001).  The Hodges court recognized that although this circuit had not formally recognized this presumption, it had been implicitly recognized in Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992), that when a claimant presents a valid I.Q. score meeting the Listing criteria, he is presumptively disabled under the Listing if the other requirements of the Listing have been met. Hodges, 276 F.3d at 1269.

The ALJ noted that in connection with a previous application for disability, on June 19, 1997, the plaintiff underwent a consultative psychological evaluation by Gerald K. Anderson, Ph.D., a clinical psychologist, at the behest of the Commissioner.

[R. 17]. Dr. Anderson stated that the plaintiff quit school after finishing the ninth grade

in EMR (educable mentally retarded) and EC (emotionally conflicted) classes. [R. 241].

Dr. Anderson administered the Wechsler Adult Intelligence Scale Revised (WAIS-R),

and the plaintiff's scores were as follows:

| Verbal | Performance | Full Scale |
|--------|-------------|------------|
| 71 | 81 | 74 |

[R. 243]. Dr. Anderson opined that the scores place "him in the borderline range of

intellectual functioning as compared to his peers in the general population." [Id.].

However, he qualified the plaintiff's results on this test:

> He has recently applied for Vocational Rehabilitation Services in Walker
> County, and was given the WAIS-R on May 8 by an examiner for
> Vocational Rehabilitation Service. Unfortunately, [I] did not know this
> until after nearly all of the WAIS-R had been administered and his scores
> on the performance tests were surprisingly good. He also then began
> making statements indicating that he recognized the stimulus figures when
> they were laid out on the testing table. Thus the present results are likely a
> high estimate of his intellectual functioning due to a recent practice effect.

[R. 241]. Dr. Anderson stated that the plaintiff "gave his best effort on the test," and that

he had reviewed a special education assessment of the plaintiff from the Jefferson County

Board of Education. [R. 243]. He opined:

> It indicated that in December of 1985 an evaluation with a standardized
> intelligence instrument yielded a full scale IQ score of 60, verbal IQ score
> of 64 and performance IQ score of 63, which would have placed Mr. Turner
> in the mild range of mental retardation as compared to his peers in the
> general population. It is possible that this was an underestimate of his true
> intellectual functioning, and since the present testing is likely an
> overestimate of his true functioning, the truth is likely in between. It is
> estimated that Mr. Turner is likely functioning at the upper end of the mild

range of mental retardation or the lower end of the borderline range of
intellectual functioning.

[R. 243-244].(emphasis added)  Dr. Anderson also concluded that the plaintiff would

"have severe difficulties in his ability to understand, carry out, and remember instructions,

and severe difficulties to respond appropriately to supervision, co-workers, and work

pressures in a work setting."[1]  [R. 244].

      The only other psychological evaluation in the record was performed on

February 1, 2005, by Richard E. Beth, Ph.D., at the request of the Commissioner.  [R.

124-126].  Dr. Beth administered a mental status examination, but did not perform IQ

testing.  He concluded that the plaintiff's "estimated level of intellectual functioning is in

the mildly mentally retarded range of intellectual functioning."[2]  [R. 126].

---

[1]  The ALJ stated:

> Parenthetically, I note that even if Claimant were able to persuade me that
> his low score of 71 translated to a score of 70 due to the "practice effect",
> he fails to meet the criteria for a diagnosis of MMR because he failed to
> show deficits in adaptive functioning."

[R. 20].  Not only is this at odds with Dr. Anderson's opinion, the ALJ substituted his
own judgment for that of a mental health professional.  The ALJ, therefore, "succumbed
to the [forbidden] temptation to play doctor and make [his] own independent medical
findings."  Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

[2]  The court is aware that Dr. Beth's Axis II diagnosis was "Rule Out Mild Mental
Retardation."  [R. 126].  The ALJ could have recontacted Dr. Beth or Dr. Anderson for
additional IQ testing to resolve this issue.  Because of the Commissioner's duty to
develop the medical record fully and fairly "it is reversible error for an ALJ not to order a
consultative examination when such an evaluation is necessary for him to make an
informed decision."  Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988)(quoting
Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (internal quotation marks
omitted).

The ALJ stated:

> Claimant argues that a finding of MMR [mild mental retardation] is
> appropriate because in 1997, Claimant scored 74, 71, and 81 on IQ tests
> administered by Dr. Anderson; that the doctor had opined that test results
> were "likely a high estimate of [Claimant's] intellectual functioning: due to
> the "recent practice effect" of having taken an IQ test through Vocational
> Rehabilitation; and that, therefore, his lowest score of 71 was "surely no
> better than 70" thus satisfying the diagnostic criteria.  The argument is a
> good one, and I would expect nothing less from Claimant's lawyer:  a good
> one.  However, Dr. Anderson was aware of all this, yet still refrained from a
> diagnosis of MMR.  Instead, he diagnosed Borderline Intellectual
> Functioning ("BIF") – a diagnosis associated with IQ scores ranging from
> 71-84.  DSM-IV 740.  Moreover, by opting for a diagnosis which,
> according to the DSM-IV, is not even a mental disorder *per se*.  It is merely
> an "additional condition that may be a focus of clinical attention".  Id.

[R. 19-20].  However, a fair reading of Dr. Anderson's report must lead to the conclusion

that the consultative examiner was of the opinion that the plaintiff's IQ was less than 71.

Moreover, the Commissioner's own consulting psychological examiner, Dr. Beth,

estimated the plaintiff's intellectual capacity in the "mildly mentally retarded range. . . ."

[R. 126].  The ALJ's conclusion that the plaintiff's alleged mild mental retardation is not

a severe medically determinable impairment is not supported by substantial evidence.

The plaintiff meets the first prong of Listing 12.05C.

The ALJ credited the opinion of Bruce Romeo, M.D., who performed a

consultative physical examination of the plaintiff on January 26, 2005.  [R. 21].  Dr.

Romeo's diagnosis was:  (1) back pain without objectively identifiable etiology; (2)

monocular vision; and (3) obesity.  [R. 117].  These diagnosed impairments are more than

slight or minimal, and therefore impose significant work-related limitations of function.

Any finding by the ALJ otherwise would not be supported by substantial evidence.  Thus the plaintiff meets the second part of Listing 12.05C.

## CONCLUSION

Therefore, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 22 October 2009.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.